Good morning. May it please the court, Lee Roy Stacker on behalf of the appellants. I'm going to reserve five minutes for rebuttal and I will watch the clock. We're here today on an interlocutory appeal of the district court's order after remand denying the appellant's motion to dismiss on qualified immunity grounds. Based on the order that we got last week, I'm assuming the court would prefer me to start with the mootness issue as opposed to the merits. That's correct. Thank you, counsel. So as the court knows, we asked for the opportunity to brief this issue, but we're here today. So let me say a couple of things about at least our position on this. This issue was raised in the prior appeal and resolved. So that's the position that we believe is the correct one. The fallot case, or flat case, was cited and discussed and analyzed before. And the prior panel must have held that it didn't control, because it's factually distinct from the circumstances that happened here. In our case, a notice of appeal was filed first and then an amended complaint. So, Mr. Roystekers, is your position that when the second amended complaint was purportedly filed in the district court here, the one that would otherwise moot our review of the first amended complaint, the district court had been deprived of jurisdiction at that point because of the notice of appeal. So that second amended complaint is not actually superseding the one on review? At least with respect to the Section 1983 claims, because those were the ones that were on appeal. The second amended complaint had a Monell claim that wasn't automatically stayed because it wasn't part of the appeal. So it's a tricky procedural sort of situation because of those two things. So they had leave to amend to reallege Monell, not Section 1983, because the district court denied the motion on those claims. That was denied, yes. Okay, I see. So that's sort of the, you know, and I'll acknowledge, I don't think fallot controls, but I'll acknowledge that there's no precedent from this court, at least dealing with the kind of sequential issue that we have here. I mean, there are out-of-circuit cases from the 7th and the 5th that are more closely aligned to our procedural posture. What, if we were to affirm, it's not what you're asking us to do, but what's your view of what happens next in the district court? Well, again, somewhat confusing and complex, because there's a second amended complaint. Part of which you would agree is still operative? Yeah, the Monell claim, and we actually moved to dismiss that claim way back when. Everything got stayed when the appeal got filed. The district court stayed the entire case. Well, I understand from, what is it, footnote 4 of the court's order that he's going to revisit that after the stay. That's what I understood. That's correct. But then the rub is that the plaintiff has filed a motion for Lee to file a third amended complaint. Well, but that's addressed in the footnote, indicating that they will consider that at that time. Yeah, I guess the district court's probably going to, I think he's going to, I think the court's going to consider all of those sort of pending motions at one time. Do you want to move on to the merits? Yeah, if there aren't any other questions about the mootness. Again, I acknowledge that sort of a tricky issue. And one of the reasons why we wanted to brief it, we recognize the oddness of how this has played out. Counsel, I have on my notes procedural mess at the top of my notes. I have called it similar things, but perhaps worse. But, yeah, it is a procedural mess. So I first want to start a little bit talking about qualified immunity, because it sort of dovetails into where we believe the district court errors are. And then address a specific claim or two, depending on the time I have left. So start from the proposition that an officer is entitled to qualified immunity unless the plaintiff pleads under the relevant Iqbal Twombly pleading standards, a constitutional claim, prong one. Prong two is that clearly established law existed at the time that is clear enough and particular enough that all reasonable officers would understand what they're doing at the time violated the law. A lot of ink has been spilled over the years on what exactly clearly established means, including in our briefing. We spent a lot of time on it. I'm not going to go over all of them. Well, specifically on fabrication of evidence, Long pleads that, and why isn't Pyle clearly established that? On the fabrication? Yes. Well, Long pleads fabrication. I mean, she pleads that things were fabricated. But from so you're sort of, I think, asking me two separate questions, at least as I see it. One is an adequate claim pled, and then number two was there clearly established law. Okay, so before we, yes, she pleads fabrication of evidence. And don't we, in order to even review this, in order to even have jurisdiction over this question, don't we have to look at all the pleaded allegations in the light most favorable to the plaintiff? And then say, does it plausibly allege a violation? And then determine whether it was a clearly established right. That's correct. Because otherwise we don't even have jurisdiction. Well, that's why you have jurisdiction over the factual content, is because you can't get to the second question without first determining the first. Right, so we have to take it all in the light most favorable to her. And she does plead fabrication of evidence. Yes, she pleads a circumstantial fabrication claim. Right, which is, circumstantial doesn't add much to that, as you know, for lawyers, particularly at the pleading stage. And we also don't consider news reports or the other articles or some of the things you're relying on, right? That would be beyond, we wouldn't have jurisdiction to go beyond the four corners of the complaint. Well, I don't think we're relying on anything outside the record, outside the complaint for fabrication, the fabrication claims, other than perhaps the trial transcripts that show the existence of what people testified to, which is the same thing that the plaintiff is claiming was fabricated. But the fabrication claims aren't necessarily all bound up in any judicially noticeable material. The point to the fabrication claims is that what's alleged is coercive interviewing techniques on witnesses that somehow overcame their free will to tell what they wanted to tell, and that we've somehow coerced them into saying things that the witnesses themselves didn't think was true. So you have to look at, coercive is a conclusory statement. You have to look at what is alleged to demonstrate coercive conduct. And there's three witnesses, one group of witnesses and two individuals that are alleged to be in coerce. First is the neighborhood witnesses. If you look at what's alleged Weeks did with respect to neighborhood witnesses, you won't find anything because there's nothing alleged. It merely says coerced. If you look at Jeff Dills, the allegation is that Weeks threatened him with prosecution. And if you look at Oscar Castaneda, the alleged coercion is telling him he needed to alibi his girlfriend because Long was pointing the finger at him. Telling somebody that they're threatening somebody with prosecution or telling them they need to alibi somebody, that's not coercive. That is not conduct that is so coercive and over the top that the person wouldn't be able to exercise their free will and feel compelled to say something else that wasn't true. Are you suggesting that our cases must clearly establish that those means of coercion are unconstitutional? I am. So I guess this is, I think, a theme throughout in terms of understanding the level of specificity. Don't we tend to require more specificity with respect to, most notably, with respect to excessive force claims because, in many ways, they're snap judgments and they're very fact specific. But in the middle run of qualified immunity claims and the underlying constitutional claims, for example, deliberate indifference with respect to 14th Amendment claims for deprivation of family relations, those sorts of things, we still do review it at a pretty high level. And I guess what I'm wondering is what's your authority that we should take kind of that very specific excessive force, fact specific snap judgment claim standard of specificity for qualified immunity and apply it in these kind of broader general due process questions? I would say this. The specificity analysis is what the Supreme Court mandates. I mean, we've all seen that. The question is whether it applies to other rights other than the Fourth Amendment. And the answer is yes. I mean, this Court has said that. In Rigo v. Ducart, 980 F. 3rd at 1299, the Court said, the fact-specific, highly contextualized nature of the inquiry does not depend on which particular constitutional right a given plaintiff claims officials have violated. In Hamby, which was a number of years before, 821 F. 3rd at 1091, this Court said, not only has the Supreme Court never suggested any such distinction, but several cases affirmatively repudiated. And then it went on to cite several cases dealing with the First Amendment, the Eighth Amendment, the Eighth Amendment, First Amendment. So that's the answer to the question, I believe, is do we apply that highly specific contextualized factual analysis to Fourteenth Amendment claims? And the answer, according to the Court, is yes. But we don't in other areas of Fourteenth Amendment claims. I don't think we do with respect to equal protection claims. I don't think we do with respect to due process claims, again, alleging deliberate indifference or purpose to harm claims in excessive force cases. I mean, I think that it is done in Fourteenth Amendment claims in excessive force cases. I don't have the cites with me because that's not one of the cases that, you know, that's not an area that we're dealing with. But I don't think it's correct that this analysis is amendment driven or right driven. Because what happened and what we have two problems with the district court's errors. One is that the district court determined that the law didn't have to be settled. That's in the order. We know that's not true. The Supreme Court has told us the law has to be settled. And the second one is nowhere in the district court's order, anywhere will you find an analysis of the allegations being made against my clients in the complaint and relating them to any facts of any of the underlying cases. And I think... You're arguing that there has to be a case squarely on point on the facts in the law. Well, I mean, I will concede now, I will concede that it's true that there doesn't have to be a case directly on point. But it's also true that close enough isn't good enough. I mean, the Supreme Court has said in White v. Polly, essentially, we don't require a case directly on point. But existing precedent must have placed the statutory constitutional question beyond debate. Isn't it beyond the debate that the police officers cannot fabricate evidence in order to win a conviction? As a general proposition, yes, I agree with that. Wouldn't a reasonable police officer know that, that they're not supposed to make it up? Correct, but there's no allegation that Weeks made anything up. The allegation is he coerced witnesses by doing A, B, and C. To pursue a false prosecution. Again, well, that's the allegation. Right, but that's... But there are no facts establishing any coercive conduct. Okay, what about the... your time's up, your time is up. But I just want to ask you, would you make the same argument with respect to the suppression of exculpatory evidence? That is the blood-free jacket belonging to Long, which was suppressed? Well, I would, because that's what this case held in Korea. Is that a well-known, well-established Brady violation? Well, I don't think... I mean, I think the judicially noticeable material clearly establishes that blood-free jacket. But we're not supposed to be looking at facts at this point and disputing facts. But you can look at the trial transcripts... We can look at that, but, I mean, we can't take it as true. What you can see, though, what you can take as true, is that the jacket was discussed. That that testimony occurred. That that event happened. You don't have to take the testimony as true. I'm not sure we can do that. We're supposed to be looking at the four corners of the complaint at this point. If I might, on your question, I mean, Carrillo says exactly, even though it was clearly established at the time of the investigations that police officers were bound to disclose Brady evidence, we must next consider whether every reasonable police officer would have understood the specific evidence allegedly withheld was clearly subject to Brady's disclosure requirements. And the jacket's just one part of the claim. I mean, the main part of that claim deals with officers' opinions and conclusions. But I'm a minute 40 over my time. I guess on my 10 minutes, so I still have some unbottled time. I think. Not really. Not really? That was 15 minutes? Wow, that was fast. Yeah, that was fast. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I'm Steve Art for the Plaintiff Appellee, Kim Long. Kim Long was wrongly convicted of a murder she didn't commit and spent years in prison because of police misconduct. Long's pleadings explain in detail how each of the five defendant officers violated her clearly established constitutional rights when they fabricated false evidence, when they suppressed material exculpatory evidence, and when they failed to preserve exculpatory physical evidence in bad faith. The District Court has correctly denied qualified immunity on the pleadings twice now, and if this Court reaches the merits, it should affirm easily. Unfortunately, this Court lacks appellate jurisdiction for two reasons. First, because the defendant's entire presentation of the appeal is a factual dispute about what is pleaded in this case. And this often by reference to outside materials. And this Court lacks appellate jurisdiction in a collateral order appeal considering qualified immunity to consider factual disputes. Second, the appeal is moot because the order being appealed and all of the defendant's arguments focus on a first amended complaint that is no longer operative in the case. Why did the District Court have jurisdiction to accept the filing of the second amended complaint to supersede the one on review? So this Court's precedence about transfer of jurisdiction during appeal suggests that if an amended complaint is filed during the pendency of an appeal, it moots the appeal. That's what Falk says. That's what the cases we cited earlier this week in our submission say. They talk about a complaint being filed during the pendency of an appeal. But even if you accepted the defendant's view that jurisdiction at the moment the notice of appeal was filed transferred to this Court, when this Court issued its mandate and the case was remanded, the second amended complaint was certainly operative at that point in time. The District Court continued to adjudicate the pleadings. We filed a third amended complaint saying to the District Court, you should consider this third amended complaint and make the decision about qualified immunity based on that complaint. The other side opposed that effort and said, no, don't accept the third amended complaint. Don't look at the second amended complaint. Look at the first amended complaint. And that's how we ended up with a second decision denying qualified immunity. Mr. Art, I guess I'll tell you a broader concern I have. I'm not sure whether this case is it. Qualified immunity is immunity from suit. And this case is a bit of a mess procedurally as it comes to us. So under your theory, what's to prevent a plaintiff from essentially subjecting someone to unreviewable on appeal suit in a way that doesn't allow us to reach the qualified immunity issue that a defendant is entitled to have us hear? I mean, I think that it absolutely needs to be considered at the earliest possible time. But in order to invoke this jurisdiction, a defendant who is appealing an order has to make sure of two things. One, that the order of the District Court that is being appealed is a final order disposing of an operative complaint. And two, that when the case reaches this court, the… Well, it doesn't have to be a final order for purposes of interlocutory appeal, right? Well, Your Honor, I think the entire idea of the collateral order doctrine is it is considered final to the extent that the District Court has resolved the legal question, is there qualified immunity based on the plaintiff's facts or the plaintiff's pleadings, right? So the notion is that this qualifies as a final order under 1291 under the collateral order doctrine, even though it is interlocutory in nature, as Your Honor is saying. But how do we know that? Must it always only arise from a… I mean, right, where it's a denial of a motion to dismiss. How can we tell? I mean, in the typical… In the cases that we have litigated, like Ms. Long's, usually you have one order in the District Court where there is an opinion saying, here is the denial of qualified immunity, and that order is appealed from, and the defendants on appeal say, we will assume the truth of the plaintiff's facts and clearly established law has not been violated. That is the normal course that happens in the extreme majority of these cases and allows the qualified immunity question, to Your Honor's concern, to be resolved at the first stage of the case. That hasn't happened here. But that hasn't happened because you filed a second complaint. We were ordered to do so by the District Court. So the District Court in December 2022 denied the motion for motion to dismiss the First Amendment complaint based on qualified immunity and at the same time ordered us to file a Second Amendment complaint, which we did on schedule. We filed that Second Amendment complaint about three weeks after the first notice of appeal was filed. We argued in the first appeal that that mooted it and the court should dismiss the appeal. We filed a motion to dismiss and send it back for resolution of the qualified immunity issue on one complaint. The court looked past that mootness issue, reached the merits, remanded for further consideration of qualified immunity. At that point in time, we moved to file a Third Amendment complaint to prevent this issue, right? So that there wasn't a decision being made on a defunct complaint. The defendant said, no, please decide based on the First Amendment complaint and that's why we have another appeal from an order. You're asking us to send this back down resulting in a third appeal on qualified immunity on that third complaint. If the court asks me what I think of the jurisdictional question in this case, I unfortunately think there is no jurisdiction. I want nothing more than an opinion on the merits affirming the denial of qualified immunity. The case has been delayed at the pleading stage for four years, almost four years. We haven't done any discovery. That is extraordinarily prejudicial to my client, Ms. Long. Witnesses' memories fade. Witnesses pass away. So of course we want this resolved. I would submit to the court that where a defendant does not follow the rules to obtain this court's jurisdiction, right, both by not making sure that they're appealing from an appealable order and by, in each of the appeals in this court, saying to this court, we're going to contest all of the facts. I mean, to be clear about the factual challenges, they start their brief by saying Long's suppression of evidence theory relating to the jacket is, quote-unquote, untrue. And so we're not even going to discuss it. They contest whether they suppressed evidence, what their mental state was, whether they fabricated it. So you're asking us to, it sounds like, I think you were asking us in your briefs at least to dismiss the appeal for lack of jurisdiction. Isn't the better approach and one we've taken to simply disregard the factual disputes and decide what's on the complaint? So our view of that is that the defendants appealing an order that is not final are obligated to secure this court's jurisdiction by affirmatively agreeing that the plaintiff's facts are true and arguing there is no violation of clearly established law based on those facts. When the appealing party does not do that and instead contests the facts as a way of saying that the law is not clearly established, this court should hold that line and say a litigant in that posture has not done what it needs to do to satisfy the collateral order doctrine and to appeal a final and appealable issue under 1291. And the reason is because otherwise you get appeals like this in succession in constitutional cases where the issue is not is this court's and the Supreme Court's law clearly established, but instead can the court consider some sort of factual dispute? What do you think is the most speedy way to get this case resolved? Our sort of ideal opinion, given the jurisdictional issues in the case, is to dismiss this appeal for lack of jurisdiction because the order appealed from is not operative and the appeal is moot, and because the defendants raise nothing but factual contests to the allegations and to hold, Your Honor, that a third appeal should not be permitted at the pleading stage of this case. The Supreme Court in Behrens made very clear a qualified immunity appeal may be appropriate both at the motion to dismiss stage of the case and at the summary judgment stage of the case, but the Supreme Court in that opinion discussed the concern about cases precisely like this one, where there are repeated appeals at one stage of the case, and in this case we think Ms. Stavsky, why do you continue to file amended complaints, then? Why don't you just go with the first one? I wish that I had, Your Honor, to be frank. Our situation is we were ordered to file a second amended complaint, and so we followed that order and we did that. And then we asked the question, what jurisdictional effect does this have? And I think that the answer to that, in candor, is that it deprives the appellate court of jurisdiction because that first amended complaint and the decisions disposing of it are not operative. And so that is my frank answer. And then on remand, what I thought to myself was, I'd better file a third amended complaint here to clean up all the allegations, put them in one place, and give the district court a single complaint on which it can evaluate qualified immunity so the next time we go up and appeal, the court will have a final order that it can consider qualified immunity on with all of our allegations. And I advocated that in the district court. I said, please accept our third amended complaint. The defendant said, no, don't. You should make this judgment on the first amended complaint. And we ended up in this, and the district court agreed with the defendants and said, I'm not going to accept the third amended complaint. I'm going to decide it based on the first amended complaint. And here we are in this situation again. Was that the same district court judge throughout this? The complaint was initially filed in front of a different judge who dismissed it. Right, because Judge Slaughter was recently appointed. Correct, Your Honor. And he came on and he inherited this case. Right, so he inherited it at the first amended complaint, ordered the filing of the second amended complaint, and didn't accept the third amended complaint on remand. And so, you know, we think that this case should be dismissed for lack of jurisdiction with an order that says to the defendants, you cannot appeal a third time at the pleading stage. On the merits, this is not a close case if you look at our pleadings. This case pleads very deeply established constitutional claims. To address the court's questions about the level of specificity, this court in the Creo case and in the Tennyson case has made very clear that when the right in question is the right to exculpatory or impeachment evidence or the right not to be tried at a trial based on fabricated evidence, because the constitutional prescription is much more specific, you don't need a case exactly on point about precisely the type of evidence in question as you do in the Fourth Amendment context. Mr. O'Rourke, do we have enough to go on, I think in paragraph 40 of the complaint, that I guess about when the defendants allegedly decided to frame as long? It's quite abstract. It doesn't tell us whether it's before or after certain acts. It just says defendants settled and built a case against her, but it doesn't give us any specificity about when they might have done that. Is that enough to go on? Maybe not on that paragraph alone, but drawing inferences from what is pleaded across the complaint, the allegation is that Long was selected as a suspect at the very moment that the five responding officers who are defendants in this case appeared at her house, and at that moment they decided that she would be their suspect, and that caused them to do several things. It caused them not to collect the blood-free jacket as evidence and to make a report that that jacket had been discovered that way and suppress that report throughout criminal proceedings. It caused them not to collect DNA and fingerprint evidence from the scene, and it caused them immediately, really in the first 24 hours, Defendant Weeks fabricated a story for Jeff Dills to tell, which was of profound effect in this case. My colleague says that we don't allege that there was actual direct fabrication of evidence. We allege it was coercion. Not so. What we're alleging is that Dills, who was with Long during the crime at issue and who dropped her off at her house minutes before 2.09 a.m. when she called 911, we allege that Dills told Weeks at the start the same story that Long had. Weeks was her only alibi witness, and instead of accepting that story, Weeks fabricated an account where Dills had dropped Long off 40 minutes earlier, creating the opportunity for her to commit the crime. And as every single court who has reviewed this case in the criminal and post-conviction proceedings has recognized, Dills' testimony creating that opportunity for Long to commit the crime was profoundly important in this case. And so the allegation is not that he coerced Dills. He certainly did. The allegation is Dills told him story A, and he said, No, Dills, you're going to tell story X. And that is direct fabrication of evidence. It is clearly prohibited by this court's decisions, including in Spencer v. Peters. It shows that the police and the witnesses who are key in this case were lying. This court in Mellon made very, very clear that where investigating officers know that a witness has lied, it must disclose that evidence. And so the claims in this case are clearly established as unconstitutional. And if this court does not dismiss the case for lack of jurisdiction and hold that the defendants here cannot take a third appeal at the pleading stage, the court should affirm all the denial of qualified immunity on the constitutional claims. All right. Thank you, counsel. Thank you, Your Honor. Long v. Weeks will be submitted. This court will be in recess for the next five minutes.
judges: WARDLAW, MENDOZA, JOHNSTONE